No. 44,563

JOHN H. ARKENBERG, et al., *Appellants*, v. THE CITY OF TOPEKA, KANSAS, a municipal corporation, THE MAYOR AND BOARD OF COMMISSIONERS OF THE CITY OF TOPEKA, KANSAS; THE TOPEKA-SHAWNEE COUNTY REGIONAL PLANNING COMMISSION; and FIRST CHRISTIAN CHURCH, a not-for-profit corporation, *Appellees*.

(421 P. 2d 213)

Opinion filed December 10, 1966.

*Robert S. Johnson*, of Topeka, argued the cause, and *Beryl R. Johnson*, of Topeka, was with him on the brief for the appellants.

*Donald S. Simons*, of Topeka, argued the cause, and *John W. Lewis*, of Topeka, was with him on the brief for the appellee city of Topeka, the mayor and board of commissioners of the city of Topeka, and the Topeka-Shawnee County regional planning commission.

*David H. Fisher*, of Topeka, argued the cause, and *Donald Patterson, C. K. Sayler*, and *Edwin D. Smith*, all of Topeka, were with him on the brief for the appellee First Christian Church.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal by plaintiff John H. Arkenberg from an adverse judgment in an injunction action arising out of a zoning controversy. At issue are the legality and reasonableness of a rezoning order.

The First Christian Church of Topeka, Kansas, owns an unplatted tract of ground about four blocks square in the southwest part of Topeka bounded by West Eighteenth Street, Stone Avenue, West Nineteenth Street, and Gage Boulevard. It purchased this property following the destruction by fire of its near downtown church building. Prior to this controversy it had erected some structures for church school purposes on the tract and it contemplates eventual construction thereon of a permanent church sanctuary and youth building. For zoning purposes the property has been classified "A" single family dwelling. Under the zoning regu-

lations of the city of Topeka churches are permitted to build upon property so classified.

On October 29, 1964, the church filed its application with the Topeka-Shawnee County Regional Planning Commission seeking a change in the zoning classification on a part of this property from "A" single family dwelling to "E" multiple dwelling high rise. The application was numbered by the commission Z 64-71. The particular property on which the change was sought was a tract 126 feet wide along the entire east side of the tract. Justification for the requested change was the contemplated construction of a thirteen-story 145 unit apartment building to provide low cost living quarters for senior citizens, the same to be financed through the Community Facilities Administration and operated by a separate nonprofit corporation directed by officers of the church. The planning commission gave due notice of the application and hearing thereon which was set for December 18, 1964. A hearing was had before the planning commission and approximately fourteen persons who were owners of homes within the neighborhood appeared in protest. This group included plaintiff and one of his attorneys who is likewise such an owner. Various objections were raised and considered, the principal one being based on increased traffic. At the hearing one of the members of the planning commission, an architect, questioned the suitability of the particular location which had been chosen for the apartment building as compared with other sites on the four block tract. By a vote of seven to zero, with one abstention, the planning commission voted to disapprove the requested change because of the "facts found under Unique Conditions," which were stated as follows:

"1. This request is in conflict with the *Preliminary Land Use Plan* and *Preliminary Zoning Regulations.*

"2. Approval of this request would promote the placing of an intense multiple dwelling in a single family dwelling area.

"3. However, there are several non-residential uses within the immediate area.

"4. It appears that the parking lot is intended to serve both the church and proposed apartment.

"5. 'E-1' Multiple could logically be permitted within this immediate area, however, it appears based upon the site plan as submitted that an extreme intensity of land use would occur.

"6. The most significant problem is that of the required yards relationship to the existing development.

"7. It would appear that a relocation of the proposed structure on the site in question could resolve or reduce any inherent objections.

"8. Building relocation would also tend to reduce the existing traffic problem within the immediate area.

"9. An additional 10′ of R. O. W. for Gage Blvd. is required to satisfy additional intensity on the property in question."

The planning commission forwarded the application to the board of commissioners of the city of Topeka for final disposition.

On January 12, 1965, the matter came on for hearing before the city commission. A protest petition signed by owners of more than twenty percent of the land within two hundred feet of the area proposed to be altered, as authorized by K. S. A. 12-708, was presented. At this hearing the church requested that action be delayed for the reason it was considering changing the location and reducing the size of the proposed building. Two protestors, including counsel for plaintiff, objected to action being taken on any change in the application which had not been before the planning commission. Upon request of the church the city commission then referred the matter back to the planning commission for further study in view of the proposed changes. By letter dated January 26, 1965, the church amended its application to provide for the construction of a 135 unit apartment building not to exceed ten stories in height located on a tract approximately 350 feet in length along West Eighteenth Street and 175 feet wide on Gage Boulevard, thus being in the northwest portion of the entire tract. The letter included a request for a permit for a parking lot adjoining the building area on the east. The planning commission treated this letter as an amendment to the original application assigning it the number Z 64-71A.

Due notice of hearing on the amended application was again given, including notice to owners whose property was not in the protest area of the first proposed site, and a second hearing had on February 19, 1965. The church expressed its willingness to convey to the city an easement for parking purposes consisting of a ten foot strip of land along Gage Boulevard between Eighteenth and Nineteenth Streets. Protest was again made by nine property owners appearing at this hearing, including plaintiff and his attorney, based on the fact the application was being acted upon a second time contrary to city ordinance, and that increased traffic, deprivation of light and air, and spot zoning would result. The application to rezone was unanimously approved by the planning commission and

forwarded again to the city commission for final disposition. On March 16, 1965, the city commission held another hearing upon the matter, both proponents and opponents appearing although no formal protest petition was filed; the commission unanimously approved the application and an ordinance was duly enacted rezoning the property as requested.

Thereafter plaintiff John H. Arkenberg filed this action against the zoning authorities and the First Christian Church requesting that the authorities be enjoined from changing the zoning classification and issuing a building permit for the proposed construction of the apartment building. Plaintiff alleged in his petition he brought the action for himself as an owner of property in the area and for the benefit of other persons similarly situated. Through answers by plaintiff to interrogatories these others are disclosed to be eleven owners of property in the neighborhood, six of whom are within the statutory protest area of 200 feet. Plaintiff recited the history of the proceedings together with his contentions as to the adverse effect of the rezoning, and further that the property surrounding the Christian Church property was primarily devoted to family homes with several churches and elementary schools nearby; he alleged that the action of the zoning authorities in permitting the rezoning was unlawful, arbitrary and capricious.

Defendants answered attaching thereto copies of a transcript of the entire proceedings before the planning commission and the city commission together with all exhibits, site plans and others made with respect thereto. They alleged that the action taken was lawful and reasonable. Thereafter each side of the lawsuit propounded interrogatories to the other and the Christian Church made request of plaintiff for admissions of fact, to all of which responses were made. Upon this state of the record each side moved the court for summary judgment, each stating the record disclosed there was no fact in dispute in the action which was material to a disposition thereof. These motions were extensively briefed and argued before the trial court and on July 1, 1965, that of the defendants was sustained and judgment rendered for them. Plaintiff appeals from that judgment.

We note first the extent of judicial review of zoning action taken by a city.

It must be understood that the governing body has the right to prescribe zoning, the right to change zoning and the right to refuse

to change zoning. The power of the court is limited to determining (1) the lawfulness of the action taken, that is, whether procedures in conformity with law were employed, and (2) the reasonableness of such action. As to the second, the court may not substitute its judgment for that of the governing body and should not declare the action of the latter unreasonable unless clearly compelled to do so by the evidence. There is a presumption that the governing body acted reasonably and it is incumbent upon those attacking its action to show the unreasonableness thereof (*Moyer v. Board of County Commissioners,* 197 Kan. 23, 415 P. 2d 261).

Plaintiff contends first that the rezoning action of the city commission was unlawful, not for any statutory impediment, but because it was in violation of a city ordinance which provides in substance that no zoning application shall be filed within one year following a previous application on the same plot. We have recited the history of the proceedings. Plaintiff argues there were in fact two separate applications made on the same property within less than one year. This contention was made before both the planning commission and the city commission and rejected by them on the basis that the amended application was not considered a new or second application because there had been no final decision by the governing body. It was further indicated no new filing fee had been charged by the planning commission, and that it was not unusual for revisions to be made on a particular application prior to final action. In this instance it appears the revision was made at the suggestion of an architect member of the planning commission in an effort to alleviate the traffic condition, the most objectionable aspect of the rezoning as originally proposed.

The trial court likewise considered plaintiff's contention and rejected it on the ground the ordinance contemplates a finality of action by the governing body; that the intermediate return of the application for reconsideration of the new design did not constitute a denial of the application but it remained in the process of consideration, and until the city commission either accepted or denied the application there was no final action as contemplated by the ordinance. This view appears sound and we concur in it. It might be further pointed out there could be no finality in any action by the planning commission. Its authority is limited to a study of the facts and submission of its recommendation to the governing body wherein authority to take final action lies. (K. S. A. 12-708.)

Plaintiff further alleges the action is unlawful in that the city commission failed to require the church to file a plat of its land with the planning commission as it should have done because it was subdividing its land. Plaintiff's assertion of subdivision arises out of the fact the church will convey to the nonprofit corporate operator the site to be occupied by the apartment building and plaintiff argues platting of the land should therefore be required before rezoning is permitted. Although there is close relationship between the subjects of planning, platting and zoning in urban affairs, we are aware of no authority, statutory or otherwise, that platting is a prerequisite for a change in zoning. Plaintiff argues that sound zoning practice dictates it, relying on *Hudson Oil Co. v. City of Wichita,* 193 Kan. 623, 396 P. 2d 271. The cited case does not go so far. It does state that platting as a prerequisite to re-zoning a small tract in a highly congested area of a city cannot be said to be an unreasonable requirement. But it does not follow that a governing body must make such order for its action to be reasonable. In the Hudson case platting was actually made and a plat filed; that which the city really sought as a prerequisite to granting the rezoning was dedication in the plat of a ten foot right-of-way along one side of the tract for a frontage road. In that case the court did point out:

"The statute [now K. S. A. 12-708] places no restrictions on the governing body in granting applications for special exceptions to existing zoning ordinances other than the procedure to be followed. (*Ford v. City of Hutchinson,* 140 Kan. 307, 37 P. 2d 39.) There are no statutory restrictions as to what requirements the governing body may place on an applicant desiring a change in the zoning area for a small tract.

"Certainly the governing body cannot be expected to anticipate all the re-quests that will be made for zoning changes and have rules and regulations available covering all conditions precedent to approval of the application.

"Any conditions precedent to the granting of the application must be reason-able and nondiscriminatory. . . ." (pp. 627, 628.)

The Christian Church can hardly be classified as a developer of a subdivision of land. Moreover, the record shows it has been the city's policy not to require churches to plat their property. We can-not see how platting in this case could be of such benefit to anyone as to be declared as a matter of law a prerequisite to rezoning of the apartment site. In any event, as a policy decision, it was for the governing body to say whether the tract should have been platted.

Plaintiff also asserts illegality by reason of the church's willingness to convey to the city a ten foot right-of-way along Gage Boulevard, contending this constitutes "contract" zoning which is against public policy. Assuming plaintiff has the right to assert such a barrier to rezoning, which may well be questioned since he is not a party to the so-called bargaining and no property right of his is directly affected thereby, this court has held contrary to plaintiff's contention as indicated in the cited quotation from *Hudson Oil Co.*, supra. Obviously the effect of any agreement respecting the right-of-way would be to alleviate the traffic condition. If it were in fact made by the governing body as a prerequisite to rezoning, which does not affirmatively appear, that would be a reasonable requirement. We conclude the procedures employed were in all respects in conformity to law.

Plaintiff contends the rezoning was unreasonable because of the increased traffic that will be created, the deprivation of light and air that will result from the construction of the building, that it constitutes spot zoning and the value of the property of the protestors will be depreciated. Plaintiff states the proposed apartment is a "right thing" but that the proposed site is "the wrong place" for it.

Examination of the neighborhood reveals the following: In the block immediately north of the disputed site, on Gage Boulevard, there is a church, and in the second block north another church, the balance of those blocks being residential; from the intersection of Gage Boulevard and Seventeenth Street south along the west side of Gage to Eighteenth Street the area is zoned for neighborhood shopping and multiple dwelling and is actually being used by a bank, a commercial flower shop, a Federal Land Bank office and other business offices. Directly across the street west from the Christian Church property there is a commercial printing plant (a nonconforming use), and the balance of the block to the south is zoned for single family dwelling. Continuing south and commencing with a service station at the intersection of Nineteenth and Gage (opposite the southwest corner of the Christian Church property) there is located what is known as the Seabrook shopping center, a commercial area of several dozen businesses extending south on Gage and west on Twenty-first Street. This shopping area also penetrates the block directly south of the Christian Church property, the northeast corner of this block being occupied by

another church. Toward the southeast there are two long blocks of single family dwellings, then the Veterans' Administration Hospital complex. Immediately to the east of the property in question is that owned by the Catholic Church and used by it for a church proper and an orphanage, which property extends from Seventeenth Street to Nineteenth Street and is zoned "D" multiple dwelling. The master plan for the city under which the area in question was initially zoned was adopted in 1947. Under the plan Gage Boulevard through the area was considered a major street and as such destined for widening to carry increased traffic.

Plaintiff directed certain interrogatories to the zoning authorities probing the nature and extent of their study of the proposed rezoning. Lengthy answers thereto revealed that investigation was made and consideration given to many factors including traffic conditions, parking facilities, safety controls for fire, panic and other dangers to the entire area, ratio of population density to ground coverage and avoidance of undue concentration of population, promotion of adequate air and light, the need and desirability of furnishing low cost housing in the area to elderly citizens, and the promotion of the orderly development of the city.

From the foregoing two things stand out: First, since the adoption of the master plan the essential nature of the entire neighborhood in question seems to have changed substantially from an all residential district, and, second, the zoning authorities have given careful attention to factors important in rezoning. The fact the planning commission did not approve the application in its initial form further evidences this. Basically, the controversy resolves itself to this: Certain residents owning their homes in the area object to the building of the proposed apartment; they have stated their reasons; these reasons have been taken into account by the zoning authorities and, in the interest of the entire city, deemed insufficient to prevent the proposed rezoning. Zoning is not to be based upon a plebiscite of the neighbors. Their wishes are to be considered but the final ruling is to be governed by the basic consideration of the benefit or harm involved to the community at large (58 Am. Jur., Zoning, § 206).

The most that could be said from the standpoint of plaintiff and those he represents is that the matter may be fairly debatable. That being so, the court may not substitute its judgment for that of the city in order to change the decision on the debate. There is no evidence of bad faith on the part of the city and nothing points to

arbitrary or capricious action in its handling of these problems of urban growth. The hearing was fairly conducted with due regard for all concerned. The rezoning was permitted only after detailed and comprehensive study of the use to be made of the property and the growth and development of other properties in that portion of the city and other pertinent factors. Touched as it is in three directions by land devoted to other than single family dwellings this property is not spot zoned. We therefore hold that plaintiff has failed to show unreasonableness in the city's decision to rezone.

After plaintiff had filed his notice of appeal from the summary judgment rendered against him he filed in the trial court what is termed a "Motion to Reconsider," which was overruled, and no appeal has been taken from that ruling. In the motion, among other things, plaintiff asserts the rendition of summary judgment was improper because the facts were in dispute, and he reiterates that contention here. Assuming, without deciding, that plaintiff can change his initial position that there were no facts in dispute in the action material to a disposition thereof, we have examined the record and find the contention without merit. Difference of interpretation or conclusion between the parties as to consequences which might result existed but there was no dispute in any essential as to what the planning commission or city commission considered or did. Nor was there any dispute of fact in the record before the trial court which could have affected the ultimate judicial issues in the case—the lawfulness and reasonableness of the rezoning. Plaintiff has pointed out nothing by way of further evidence or line of inquiry as to disputed factual items which could have changed the decision on those issues.

The judgment of the trial court was correct and it is affirmed.

APPROVED BY THE COURT.