Reginald **LOVELY**

v.

The **ZONING BOARD OF APPEALS OF**
the **CITY OF PRESQUE ISLE.**

Supreme Judicial Court of Maine.

Dec. 4, 1969.

Floyd L. Harding, Presque Isle, for plaintiff.

Bishop & Stevens by, James A. Bishop, Presque Isle, and Richard C. Engels, Houlton, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE, and POMEROY, JJ.

WEBBER, Justice.

This was an appeal to the Superior Court from the denial of a variance by the Zoning Board of Appeals of Presque Isle. In the Superior Court the action of the Board was reversed and the variance granted. The latter action is now subject to review upon the Board's appeal.

Although there is no record of the evidence adduced either at the hearing before the Board or at the later hearing before the Superior Court, the parties agree that the facts are not in dispute and are fully and accurately set forth in the "decree" of the Superior Court. The only issue here is whether or not the applicable law was correctly applied to the facts as found.

In 1967 the appellee sought to "open and operate a grocery store" in an "agricultural zone" in which such an operation is not a permitted use. He had owned the premises since 1953 and had leased them to a tenant who sold groceries and beer but who was evicted by appellee in the fall of 1965 for breach of his lease agreement. Thereafter the premises remained vacant, more than a year having elapsed before this variance was sought. At the Board hearing, no opposition was offered and it was stipulated that the testimony of 25 Presque Isle residents, 13 of whom lived in the vicinity of the proposed store, would be "in favor" of the variance requested. Under appellee's proposal, adequate parking facilities would be provided, needed repairs would be made which would improve the appearance of the building, and there would be no adverse effect upon adjacent properties or the neighborhood.

The Board in denying the variance recited two reasons therefor, first that the non-conforming use had been discontinued for more than one year, and second that the applicant had failed to show either undue hardship to himself or to the best interests of the community. There was evidence in the Superior Court that the Board "wanted to retain its commercial area, and not extend it," and that the Board felt this policy "was better for the City services, such as fire, police, etc."

We turn first to a consideration of the responsibility of the Superior Court when hearing and determining appeals from decisions of zoning boards of appeals, a matter not heretofore fully clarified in our decisions.

30 M.R.S.A., Sec. 4954(2) provides for such appeals. We quote those portions of the sub-section which bear directly on the situation in the instant case.

"A. * * * The board may grant a variance from the terms of an ordinance *where necessary to avoid undue hardship,* provided there is no substantial departure from the intent of the ordinance. * * *

B. The appeal to the Superior Court shall be taken within 30 days after the

decision. Notice of the appeal shall be ordered by the court, and the appeal shall be tried and determined by the court without a jury *in the manner and with the rights provided by law in other civil actions so heard.* Costs may be awarded to the prevailing party by the court as justice requires." (Emphasis ours)

The Zoning Ordinance incorporated the statutory appeal provisions in Sec. 9D(6).

The statute has been regarded as providing for a proceeding that is "de novo" in the Superior Court. Moyer v. Board of Zoning Appeals (Me.1967) 233 A.2d 311, 316. But the very nature of the issues on appeal necessarily limits the scope of what is intended by the use of the phrase "de novo." As the Court noted in Moyer, the Zoning Board of Appeals makes its determination "in the exercise of a liberal discretion, with court action therein in the nature of an appellate review and not as an original proceeding." The Kansas Court confronted this dilemma in the recent case of Keeney v. City of Overland Park (1969) 203 Kan. 389, 454 P.2d 456, 459. The Court said, " 'The statutory proceeding * * * is neither a trial *de novo* nor an appeal in the true sense of the word. When the trial court hears evidence anew in a case of this character, the proceeding resembles a trial *de novo*, but there the semblance ends.' * * * Although we said that the proceeding in district court bears some semblance of a trial *de novo*, we cautioned that the power of the court is limited to determining (a) the lawfulness of the action taken, that is, whether procedures in conformity with law were employed; and (b) the reasonableness of such action. With respect to the question of reasonableness, the court *may not substitute its judgment* for that of the governing body and should not declare the action of the governing body unreasonable *unless clearly compelled to do so by the evidence.* * * * Within the framework of issues made up by the pleadings or at pretrial conference, the court may receive and con-

sider any evidence relevant to the limited question of reasonableness. The test of relevancy should not depend on availability of a full and complete transcript of the proceedings before the city governing body. In actual practice, the proceedings may or may not be recorded. If a record is made, as it was here, it is relevant and admissible in the district court." (Emphasis supplied) We are satisfied that the guidelines laid down in Keeney present a rational and practical means of dealing with appeals from quasi-judicial decisions of municipal agencies. They are fully applicable to appeals from the granting or denial of variances by zoning boards of appeals under our own practice and accord with such admonitions as are to be found in our own prior decisions. For example, Moyer v. Board of Zoning Appeals, supra, emphasized that the issues judicially reviewed must be the same issues considered and determined by the Zoning Board of Appeals, and language used therein makes it apparent that the proper test on appeal is whether or not the decision of the Board was unlawful, arbitrary, capricious or unreasonable.

In the instant case, Sec. 9D(4) of the Ordinance dealing with the powers and duties of the Board of Appeals provided in part:

"(c) To authorize upon appeal with respect to the particular parcel of land or to an existing structure thereon, a variance from the terms of this ordinance especially affecting such parcel or such structure, but not affecting generally the zone in which it is located, where a literal enforcement of the provisions of this ordinance would involve *undue hardship to the appellant or to the best interests of the community,* and where desirable relief may be granted without substantial detriment or injury to the neighborhood or the public good, and provided there is no substantial departure from the intent or purpose of this ordinance, but not otherwise." (Emphasis ours)

■ The burden was upon the applicant to prove "undue hardship" to himself or to the public if the variance should be denied. In determining that the applicant had met this burden of proof, the Court below adopted the definition of "unnecessary hardship" employed by the New Hampshire Court in St. Onge v. City of Concord (1948) 95 N.H. 306, 63 A.2d 221, 223, 224, and Fortuna v. Zoning Board of Adjustment (1948) 95 N.H. 211, 60 A.2d 133, 135. Therein it was stated that *any* hardship suffered by the applicant as a result of the interference with his right to use his property, without commensurate public advantage, is an unnecessary hardship. The seeming liberality of this rule as applied to the granting of variances is perhaps more apparent than real. The St. Onge Court also held that "financial hardship in and of itself does not warrant a variance." In a vigorous dissenting opinion, Duncan J. said, "The device of the variance was not intended to afford relief from zoning requirements whenever deemed burdensome to the individual. Its purpose was to preserve the integrity of the public act, not to protect the individual from intended consequences of the act. * * * Reasonable restriction upon use, *which affects one no more than another,* is not 'unnecessary hardship.'" (Emphasis ours). The New Hampshire rule was again applied in Bouley v. City of Nashau (1964) 106 N.H. 79, 205 A.2d 38. Our research and that of counsel have produced only one other reported case adopting the rule which balances "any hardship" against the "public benefit." Such was the holding of a single Justice in Broad-Miami Co. v. Board of Zoning Adjustment (Ohio Com. Pl.1959) 185 N.E.2d 76. But cf. Beerman v. City of Kettering (Ohio Com.Pl.1965) 14 Ohio Misc. 149, 237 N.E.2d 644, 649.

■ What seems to be clearly the majority rule is bottomed on a statement in the leading case of Otto v. Steinhilber (1939) 282 N.Y. 71, 76, 24 N.E.2d 851, 853. In that case the Court of Appeals said, "Before the Board may exercise its discretion and grant a variance upon the ground of unnecessary hardship, the record must show that (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood which may reflect the unreasonableness of the zoning ordinance itself; and (3) that the use to be authorized by the variance will not alter the essential character of the locality." Deardorf v. Board of Adjustment of Plan. & Zon. Comm. (1962) 254 Iowa 380, 118 N.W.2d 78, 81; Nelson v. Board of Zoning Appeals of Indianapolis (Ind.App.1959) 158 N.E.2d 167, 174; see Moody v. City of University Park (Tex.Civ.App.1955) 278 S.W.2d 912, 920. It is generally held that a variance cannot be grounded on a disadvantage common to other property owners in the restricted zone, and that a mere financial disadvantage will not suffice. Application of Groves (1955) 226 S.C. 459, 85 S.E.2d 708, 710, 711; Culinary Institute of Am. v. Board of Zoning App. (1956) 143 Conn. 257, 121 A.2d 637, 639. In Libby v. Board of Zoning Appeals (1955) 143 Conn. 46, 118 A.2d 894, 896, the Court gave its interpretation of "unnecessary hardship" in these terms:

"Situations will arise, however, where the application of zoning to a particular piece of property practically destroys or greatly decreases its value for any permitted use to which it can reasonably be put, and where the application of the ordinance bears so little relationship to the purposes of zoning that, as to that property, the regulation is, in effect, confiscatory or arbitrary."

We equate the phrase "undue hardship" as used in the ordinance with "unnecessary hardship" as judicially defined. In our view the somewhat more exacting requirements of the majority concept better accord with the purpose and intent of zoning. When the people have adopted a plan for the future growth and development of the community and a zoning ordinance to im-

plement that plan, they have in effect concluded that it is for the public benefit and advantage that the restrictions imposed be observed. Variances should not be easily or lightly granted and a variance should be the exception and not the rule. We are satisfied that requirements of proof imposed by the majority view are best adapted to achieve this result.

Turning now to the proof offered by the appellee here, there is no suggestion that his property cannot yield a fair return if used only for one of the many purposes permitted within the "agricultural zone" or that its value is practically destroyed or greatly decreased by the restriction. All that is shown is the deprivation of appellee's right to use his premises for a "trade" or "commercial purpose" (i. e. grocery store), a deprivation shared in common with every other owner of property in the "agricultural zone." The only special circumstances shown by appellee are that he had at some time in the past enjoyed a non-conforming use, granted by way of variance, a right subsequently lost by the application of the Ordinance, Sec. 10A(3) which provides in part, "If * * * any non-conforming use is discontinued for a period of one year * * *, the future * * * use of the premises or structure shall thereafter be in conformity with the provisions of this ordinance."

■■■ The Board was not required to grant a variance which would re-establish a non-conforming use merely because one had existed at some time in the past. On the contrary, it was incumbent upon the Board *not* to create anew a non-conforming use

except upon satisfactory proof of undue hardship as we have defined it. In Inhabs. of Town of Windham v. Sprague (Me. 1966) 219 A.2d 548, 552 we quoted with approval the text of 101 C.J.S. Zoning § 182 p. 939 which states:

> "The spirit of the zoning ordinances and regulations is to restrict rather than to increase any nonconforming uses, and to secure their gradual elimination. Accordingly, provisions of a zoning regulation for the continuation of such uses should be strictly construed, and provisions limiting nonconforming uses should be liberally construed. The right to continue a nonconforming use is not a perpetual easement to make a use of one's property detrimental to his neighbors and forbidden to them, and nonconforming uses will not be permitted to multiply when they are harmful or improper."

We added, "Nonconforming uses are a thorn in the side of proper zoning and should not be perpetuated any longer than necessary. The policy of zoning is to abolish nonconforming uses as speedily as justice will permit."

In the instant case, it is apparent that upon the whole evidence as summarized by the Court below, the applicant for variance has failed to sustain his burden of proving undue hardship as we have defined it. On this posture of the evidence the judgment of the Board must prevail. The entry will be

Appeal sustained.

Decision of Zoning Board of Appeals affirmed.